# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HOWARD LEE YOUNG, ) | |
| ) | NO. 3:22-cv-00812 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA ) | |

## MEMORANDUM

Pending before the Court are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1), Supplemental Motion to Vacate Sentence Pursuant to 28 U.S.C. Section 2255 (Doc. Nos. 19, 19-1), and Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 22). The Government filed Responses in opposition to both motions (Doc. Nos. 11, 26), and Petitioner filed Replies (Doc. Nos. 14, 15, 27). The Court held a hearing on Petitioner's motions on June 23, 2025. For the reasons stated below, Petitioner's Motions (Doc. Nos. 1, 19, 22) are **DENIED**.

### I. BACKGROUND

In December 2020, Petitioner pled guilty to one count of wire fraud and one count of bank fraud. (Doc. No. 12, Case No. 3:20-cr-00169). The Plea Agreement entered into by the parties recommended a final offense level of 28, and the parties agreed in the Plea Agreement that the amount of restitution owed to victims was $669,470.52. (*Id.* at 12-13).

The Government's sentencing memorandum provided that the actual loss amount was $693,128.89. (Doc. No. 17 at 3, Case No. 3:20-cr-00169). The Government stated that Petitioner convinced victim T.A. to transfer real property to Petitioner via quitclaim deed in order to participate in Petitioner's underlying fraudulent scheme and that if Petitioner transferred the deed back to T.A.'s estate, the Government would agree to reduce the loss amount by $201,500. (*Id.* at 4). Petitioner's sentencing memorandum provided that Petitioner was prepared to execute a quit

claim deed to T.A.'s estate, but that Petitioner failed to provide counsel, Robert Vaughan, with necessary documents to execute the quit claim deed and that Vaughan would execute the quit claim deed upon receipt of the necessary documents from Petitioner. (Doc. No. 20 at PageID # 89, Case No. 3:20-cr-00169).

Moreover, Petitioner's presentence investigation report ("PSR") provides that "[o]ne of the victims, Timothy Anderson, who chose to participate in the fraudulent study, did not sign up for a credit account. Instead, on May 6, 2019, Anderson submitted a Quit Claim Deed of his home, to Young, as payment. Anderson is now deceased and Young currently holds the Quit Claim Deed. According to the Metropolitan Nashville Assessor of Property, the residence is valued at 201,500. While the residence would likely sell for a much higher amount, the conservative property value is used for the loss calculation in this case." (Doc. No. 29 at PageID # 142-143). The PSR also states that "[t]he following victims sustained actual losses as a result of the defendant's fraudulent scheme to defraud:…Anderson, Timothy." (Doc. No. 29 at PageID # 144). Moreover, the PSR states "[i]n addition to the financial institutions, Timothy Anderson also suffered a financial loss. The total amount of restitution owed is $693,128.66 and shall be forward to the following… Estate of Timothy Anderson (address forthcoming) $201,500.00." (Doc. No. 29 at PageID # 144-145).

Petitioner affirmed at the plea hearing that he had read the entire Plea Agreement and that his lawyer answered all of his questions to his satisfaction. (Doc. No. 40, Case No. 3:20-cr-00169, at PageID # 247-248). Petitioner also affirmed that he understood that by pleading guilty he was waiving his right to a trial. (Doc. No. 40, Case No. 3:20-cr-00169, at PageID # 250-251).

At Petitioner's sentencing hearing, Petitioner affirmed that he had read the presentence investigation report or summarized it with his lawyer and that his lawyer answered his questions. (Doc. No. 41, Case No. 3:20-cr-00169, at PageID # 271).

Petitioner was sentenced to 96 months' imprisonment followed by a supervised release term of 3 years. (Doc. No. 26 at PageID # 117-118, Case No. 3:20-cr-00169). Petitioner is expected to be released on June 17, 2027.

Petitioner now brings claims under 28 U.S.C. § 2255 for ineffective assistance of counsel.

## II.  LEGAL STANDARD

Petitioner brings this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under Section 2255, a petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)); *see also Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999).

To prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004). A court deciding an ineffective assistance claim does not need to address both requirements if the petitioner makes an insufficient showing on one. *Id*. at 697. Appellate counsel's

assistance is assessed under the same *Strickland* two-part standard. *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 669; *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. at 669.

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

### III. ANALYSIS

Having held an evidentiary hearing and reviewed the record in Petitioner's underlying criminal case and the filings in this case, the Court finds that Petitioner's claims are contradicted by the record, which shows that Petitioner's counsel diligently represented him.

**A. Petitioner's Initial § 2255 Motion**

Petitioner argues in his initial § 2255 petition that he had ineffective assistance of counsel because: (1) the quitclaim deed from victim T.A. was not mentioned in the plea agreement and he was not told that executing the quitclaim deed would reduce his offense level by 2; (2) he did not know that $201,500 had been added because of the value of T.A.'s real property; (3) T.A. was not a victim and Petitioner had a written agreement to remodel the dwelling and re-deed the property after the renovations; (4) Vaughan failed to object to certain statements made by the Government, including that Petitioner misused funds for personal use and caused some deaths, and that victims did not receive services for payment; (5) After being told he would receive a minimum sentence of 96 months if he pled guilty, Petitioner told Vaughan he wanted to go to trial and was not informed of any enhancements, (6) Vaughan did not raise Petitioner's health issues at the sentencing hearing; and (7) Petitioner's counsel failed to object to the multiple victims and sophisticated means enhancements.

The Court first addresses Petitioner's claims regarding the quitclaim deed, the value of the property, and whether T.A. was a victim. Vaughan testified at the evidentiary hearing that he frequently communicated with Petitioner regarding the quitclaim deed and that Petitioner informed Vaughan that he would provide him a copy of the quitclaim deed. Vaughan also testified that he emphasized the importance of the quitclaim deed to Petitioner and informed him that the quitclaim deed could have a potentially significant impact on Petitioner's sentence.

The Government also filed an affidavit of Vaughan (Doc. No. 11-1), in which Vaughn states that he "spoke with Mr. Young about quitclaiming T.A.'s house back to his family, and Mr. Young said he would get [Vaughn] the paperwork," that Vaughan "repeatedly asked Mr. Young for the paperwork, and he repeatedly told me he would get it to me, but then did not" and that he

5

Case 3:22-cv-00812    Document 42    Filed 10/03/25    Page 5 of 9 PageID #: 225

"told Mr. Young that I would not prepare a quit claim deed until I got the information from him." (Doc. No. 11-1 at PageID # 65). Vaughn's affidavit also provides that he "met with Mr. Young and discussed the sentencing guidelines, whether he should enter a guilty plea, whether he should accept the government's plea offer, and the risks and benefits of going to trial" and that "Mr. Young indicated that he wanted to enter a guilty plea" and "[b]efore Mr. Young entered his guilty plea, we went over the entire plea agreement, including the facts and guidelines calculations, and the plea petition" and "Mr. Young agreed with the facts in the plea agreement." (Doc. No. 11-1 at PageID # 64). Vaughn's affidavit states that Young "was aware that the recommended Guidelines Range was 78-97 months" and "[a]t no point did Mr. Young indicate he wanted to go to trial." (Doc. No. 11-1 at PageID # 65). Vaughan stated that he "explained to Mr. Young that the amount of restitution was largely based on the loss to the two financial institutions from the health credit accounts" and "Mr. Young was aware that the value of T.A.'s home would be included in the restitution amount." (*Id.*).

The Government also informed the Court at the hearing that in June 2022, Petitioner attempted to sell the property to a third party, which the Government contends demonstrates that Petitioner did not intend to quitclaim the property back to T.A.'s estate. The Government also contends that it recommended a sentence in the middle of the Guidelines range and that the Court rejected the proposed sentence for a higher sentence and that the Court would have imposed the higher sentence regardless of the status of the quitclaim deed, that the quitclaim deed would not have changed the loss amount, and that Petitioner made no effort to obtain the information necessary to execute the quitclaim deed.

Counsel for the Petitioner contends that Vaughan could have obtained the necessary information for the quitclaim deed himself or requested a continuance of Petitioner's sentencing

hearing. However, the record establishes that Vaughan communicated with Petitioner regarding the quitclaim deed on multiple occasions, that Petitioner was aware of the information he needed to provide to execute the quitclaim deed, and that Petitioner failed to provide the necessary information. Accordingly, the Court finds that the record contradicts Petitioner's claims in his initial § 2255 motion regarding the quitclaim deed.

Moreover, the record demonstrates that Petitioner agreed in the Plea Agreement that the amount of restitution owed to victims was $669,470.52 and affirmed at the plea hearing that he had read the entire Plea Agreement, gone over it with his lawyer, his lawyer had answered his questions satisfactorily, and he understood the amount of restitution. (Doc. No. 41 at PageID # 271, Doc. No. 40 at PageID # 248, Doc. No. 40 at PageID # 250-251).). *Byrge v. United States*, No. 318CR147TAVHBG17, 2021 WL 5168255, at *6 (E.D. Tenn. Nov. 5, 2021) (internal citation omitted) ("Solemn declarations in open court carry a strong presumption of verity[.]").

The record also contradicts Petitioner's claim he told his lawyer that he wanted to go to trial and was not informed of any enhancements, as Petitioner agreed to a final offense level of 28 in the plea agreement, which included several enhancements, and Petitioner testified at the plea hearing that he understood that by pleading guilty, he was giving up his right to go to trial. (Doc. No. 40, Case No. 3:20-cr-00169, at PageID # 250-251).

With regard to Petitioner's claim that Vaughan failed to raise Petitioner's health issues at the sentencing hearing, the record clearly establishes that Vaughan moved for a downward variance based on Petitioner's deteriorating health. (Doc. No. 41, Case No. 3:20-cr-00169, at PageID # 282, 285) ("So I would ask, again, for a radical downward departure, Your Honor, subject to the fact that he needs this medical care and treatment...").

7

Petitioner's claim that his counsel erroneously failed to object to statements by the Government that he misused funds for personal use, caused some deaths, and that victims did not receive services for payments is also contradicted by the record. Petitioner stipulated in the Plea Agreement that he "withdrew a portion of the funds for his own personal use, made payments to his personal credit cards, and made minimum payments on accountholders' credit accounts and loan accounts." (Doc. No. 12, Case No. 3:20-cr-00169 at PageID # 40). Petitioner also stipulated in the Plea Agreement that he "failed to provide the services he promised when patients signed up for the study" and that "[p]atients did not routinely receive the nutritional supplements he promised, nor did they receive nutrition and exercise coaching, gym memberships, massages, or acupuncture as [Petitioner] had promised." (*Id.*)

The record also contradicts Petitioner's claim that Vaughan erroneously conceded the multiple-victim and sophisticated means enhancements, as Petitioner stipulated to both enhancements in the Plea Agreement and affirmed at the plea hearing that he had read the entire Plea Agreement and that his lawyer answered all of his questions to his satisfaction. (Doc. No. 40, Case No. 3:20-cr-00169, at PageID # 247-248; Doc. No. 12, Case No. 3:20-cr-00169 at PageID # 44).

Accordingly, the Court finds that Petitioner has failed to show that his counsel's conduct fell below an objective standard of reasonableness or that he suffered prejudice with respect to the claims in his initial § 2255 petition.

**B. Amended § 2255 Motion**

In his amended motion, Petitioner argues ineffective assistance of counsel on the following grounds: (1) Vaughan failed to execute the signed quitclaim deed; (2) Vaughan conceded the multiple-victim and sophisticated means enhancements; and (3) Vaughan erroneously stipulated that Petitioner caused 2 financial institutions to sustain losses of $172,560.89 and $319,067.77, because these amounts include finance charges and interest which are not "losses" under the Guidelines. Petitioner's renewed claims that Vaughan erroneously failed to execute the quitclaim deed and conceded the multiple-victim and sophisticated means enhancements fail for the reasons stated above.

Moreover, the Court finds that Petitioner's claim regarding the loss amount is contradicted by Petitioner's stipulations in the Plea Agreement, as well as his sworn statements at the plea and sentencing hearings, and Petitioner fails to otherwise demonstrate that the loss amount was overstated.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown deficient performance by his attorney or any prejudice based on his attorney's representation.

Accordingly, Petitioner's motions (Doc. Nos. 1, 19, 22) are **DENIED**, and this action **DISMISSED**.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE